IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTINE BUTLER and DENISE GOINS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL NO. 08-354-GPM |
| TAMMY DUCKWORTH, Individually and in her Official Capacity as Director, Illinois Department of Veterans Affairs, and PATRICIA SIMMS, | ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiffs Christine Butler and Denise Goins think they were disciplined because they complained about conditions at their workplace, the Anna Veterans Home, while they were state employees. This is a suit under 42 U.S.C. §§ 1983 and 1988 with supplemental state law claims. The basis for the federal claims is that their complaints about workplace conditions are protected by the First Amendment to the United States Constitution. Defendants' motion to dismiss was heard November 17, 2008, and is granted for the following reasons.

### BACKGROUND

This is a garden variety workplace case that pits Plaintiffs against their bosses and resulted in what Plaintiffs think is unfair disciplinary action against them. Defendant Patricia Simms became the acting administrator of the Veterans Home in Anna, Illinois, in August 2006 and, as alleged, soon began a campaign of harassment and retaliatory actions against Plaintiffs. They claim that

Simms read the personal notebook of an employee, disobeyed the instructions of a supervisor, changed policies to the detriment of Plaintiffs, filed false performance evaluations, allowed political campaigning in the facility, allowed non-employees into the facility who then became abusive, and filed pre-disciplinary charges against Plaintiffs without any justification. When Plaintiffs filed reports on Simms's misconduct, she further antagonized them by completing false performance evaluations, issuing disciplinary writeups for imaginary infractions, and redrafting policies with the intent to harass Plaintiffs.

Defendant Tammy Duckworth, director of the Illinois Department of Veterans Affairs, eventually received Plaintiffs' complaints and fired Butler at a meeting in May 2007. Duckworth later amended the firing and reduced the discipline to administrative leave. The story is that Duckworth used this incident to try to silence any future complaints of Plaintiff Goins. When Goins continued to complain, more harassment by Simms followed.

## ANALYSIS

Defendants argue that Plaintiffs' speech (complaints) is not protected by the First Amendment under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), because it was not made by Plaintiffs as private citizens regarding a matter of public concern. Instead, Plaintiffs were public employees speaking pursuant to their official duties or job responsibilities, and this does not implicate the First Amendment.

Speech made by government employees as part of their official duties is not protected by the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The Seventh Circuit Court of Appeals recently summarized *Garcetti* and set forth the framework a trial court should use to determine whether a public employee's speech is protected under the First Amendment.

"[T]he First Amendment protects a public employee's right, in certain

circumstances, to speak as a citizen addressing matters of public concern." *Morales v. Jones*, 494 F.3d 590, 595 (7th Cir.2006). A § 1983 claim that alleges a defendant retaliated in response to a plaintiff's proper exercise of her First Amendment rights must satisfy a three-step test in order to survive summary judgment. *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir.2006). The first step is assessing whether the plaintiff's speech is constitutionally protected. *Id*. Next, the court must assess whether the plaintiff has demonstrated that the alleged retaliatory activity was motivated by the constitutionally-protected speech. *Id*. Finally, if the plaintiff satisfies the first two steps, the court must assess whether the defendant has demonstrated that it would have taken the same action irrespective of the plaintiff's speech. *Id*.

In order to determine the first step, courts usually referred to the *Connick-Pickering* test – whether the employee spoke as a citizen on a matter of public concern, and if so, her interest as a citizen in commenting on the matter of public concern outweighed the State's interest in promoting effective and efficient public service. *Spiegla II*, [*Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007)]. The Supreme Court in *Garcetti* provided further guidance as to when a public employee can be considered, for First Amendment purposes, to be speaking as a citizen. The Court held that "when public employees make statements *pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421, 126 S. Ct. 1951 (emphasis added). Therefore, *Garcetti* (issued after the district court proceedings ended in this case) requires courts to first decide whether a plaintiff was speaking "as a citizen" or as part of her public job, before asking whether the subject-matter of particular speech is a topic of public concern. *Mills v. City of Evansville, Indiana*, 452 F.3d 646, 648 (7th Cir.2006) (citing *Garcetti*, 547 U.S. at 421, 126 S. Ct.1951). Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description. *Vose v. Kliment*, 506 F.3d 565, 569 (7th Cir.2007) (citing *Garcetti*, 547 U.S. at 425; 126 S. Ct.1951). While "[t]he fact that an employee has a personal stake in the subject matter of the speech does not necessarily remove the speech from the scope of public concern," *Phelan*, 463 F.3d at 791 (quoting *Button v. Kibby-Brown*, 146 F.3d 526, 529 (7th Ci r. 1998)), the "public concern" element must relate to a community concern and is not satisfied by "merely a personal grievance of interest only to the employee." *Sullivan v. Ramirez*, 360 F.3d 692, 699 (7th Cir.2004) (citation omitted).

*Houskins v. Sheahan*, Nos. 06-2283, 06-2549, 06-2575, 2008 WL 4977584 at * 7 (7th Cir. Nov. 25, 2008).

Here, Plaintiffs allege retaliation for lodging complaints about Defendant Simms to both the

IDVA administration, Deputy Director Rios, Director Duckworth, and the Office of the Inspector General. These complaints detail specific misconduct of Simms as head of the Anna Veterans Home, including a pattern of abuse and harassment of Plaintiffs. Also included are specific violations of the IDVA Policy and Procedures Manual and Employee Handbook allegedly committed by Simms. These complaints relate to the specific job performance of Plaintiffs' supervisor, her treatment of them, and the administration of their office, and, as such, were clearly within their responsibilities as public employees. These complaints were not initiated by Plaintiffs as private citizens.

Since Plaintiffs did not speak as private citizens, the Court will not answer the question whether the subject-matter of the particular speech was a topic of public concern. *See Houskins*, 2008 WL 4977584 at *7, *citing Mills*, 452 F.3d at 648.

Defendants' motion is filed under Federal Rule of Civil Procedure 12(b)(6) rather than Rule 56, but this does not change the result. In *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008), the Seventh Circuit Court of Appeals affirmed the district court's dismissal of a First Amendment claim on a Rule 12 motion based on *Garcetti*. That case involved the testimony of a senior administrator of an agency overseen by the legislative committee before whom she testified. In finding that the plaintiff testified about matters within the scope of her job duties and that her testimony was given as an employee, her speech was deemed not protected under the First Amendment.

> Ms. Tamayo cannot escape the strictures of *Garcetti* by including in her complaint the conclusory legal statement that she testified "as a citizen ... outside the duties of her employment," R.76 at ¶ 106. A plaintiff cannot rely on "labels and conclusions." [*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)]. Nor are we "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Cases such as the one before us require that we take special care to keep these principles in mind. While *Garcetti* explicitly admonishes us not to tolerate "excessively broad job descriptions" that might restrict artificially an employee's First Amendment rights, 547 U.S. at 424, we also are

directed to take a "practical" view of whether an employee is speaking as an employee or as a citizen, *id*.

*Tamayo*, 526 F.3d at 1092 (internal footnote omitted).

A practical view of the complaint in this case is that Plaintiffs are complaining about matters within the scope of their job duties at the Anna Veterans Home. Plaintiffs are irked at the way they were treated by their supervisors. But this happens in every organization, public and private, and is best addressed by state law and collective bargaining. The First Amendment is not implicated by office backbiting or petty managers.

Plaintiffs spoke as employees and not citizens, so their speech is not protected by the First Amendment.

The Court declines to exercise supplemental jurisdiction over the state law claims, and they are dismissed without prejudice.

## Conclusion

For the foregoing reasons, the motion to dismiss (Doc. 8) is **GRANTED**. Plaintiffs' First Amendment claims are **DISMISSED with prejudice**. Plaintiffs' remaining state law claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 12/12/2008

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge